Lawrence Peikes (LP-2478)
Wiggin and Dana LLP
450 Lexington Avenue
Suite 3800
New York, NY 10017
(212) 490-1700
(212) 490-0536 (fax)

Attorneys for Defendants
EMBRACE TECHNOLOGIES INC.,
EMBRACE INFRASTRUCTURE, LLC, and
MICHAEL EINSTEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X

GREGORY SHERALD,                              :
                                              :
                    Plaintiff,                :
                                              :
            v.                                :
                                              :  **CASE NO. 11 Civ. 0939 (TPG)**
EMBRACE TECHNOLOGIES INC.,                    :
EMBRACE INFRASTRUCTURE, LLC, and              :
MICHAEL EINSTEIN                              :
                                              :
                    Defendants.               :

-------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated: May 18, 2012
        New York, New York

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ....................................................................... 1

II.  STATEMENT OF FACTS ............................................................................. 3

III. ARGUMENT ............................................................................................... 5

     Point I:  Plaintiff's Claims Alleging Underpayment of Overtime Compensation...........6
     Due to a Miscalculation of the "Regular Rate" Fail as a Matter of Law

     Point II:  Plaintiff's "Off-The-Clock" Claims Fail as a Matter of Law.........................10

     A.   Plaintiff Cannot Prove He Performed Work For Which He Was Not
          Properly Compensated. ................................................................... 10

          1.   Meal Break Claim .................................................................. 11

          2.   Pre-Shift Claim ..................................................................... 14

     B.   Plaintiff Cannot Prove Defendants Had Actual Or Constructive Knowledge
          Of His Alleged Off-The-Clock Work. ............................................... 16

     Point III:  Plaintiff Enjoys No Right to Payment of Accrued but Unused Vacation
     Time and Therefore the Fourth Cause of Actions Fails................................ 19

     Point IV:  Plaintiff's Fifth Cause of Action Alleging "Improper Charges Against Pay"
     is Unsustainable as a Matter of Law............................................................ 20

IV.  CONCLUSION ........................................................................................... 21

# TABLE OF AUTHORITIES

Aiken v. City of Memphis, 190 F.3d 753 (6th Cir. 1999) ............................................ 16

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .......... 6

Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1414 (1946) .... 11

Angello v. Labor Ready, Inc., 7 N.Y.3d 579, 825 N.Y.S.2d 674, 859 N.E.2d 480 (2006) .......... 21

Brown v. Eli Lilly and Co., 654 F.3d 347 (2d Cir. 2011) ............................................ 5

Chambers v. Roebuck & Co., 2011 U.S. App. LEXIS 12150 (5th Cir. June 15, 2011) ................ 16

Chao v. Gotham Registry, Inc., 514 F.3d 280 (2d Cir. 2008) ........................................ 14

Chavez v. City of Albuquerque, 630 F.3d 1300 (10th Cir. 2011) .................................... 8

Ellis v. Common Wealth Worldwide Chauffeured Transportation of NY, LLC,
    No. 10-CV-1741, 2012 U.S. Dist. LEXIS 40288 (E.D.N.Y. Mar. 23, 2012) ......................... 18

Espinoza v. County of Fresno, No. 1:07-cv-1145, 2011 U.S. Dist. LEXIS 85401
    (E.D. Cal. Aug. 3, 2011) ..................................................................... 16

Forrester Roth's I.G.A. Foodliner, Inc., 646 F.2d 413 (9th Cir. 1981) ............................. 19

Holzapfel v. Town of Newburgh, 145 F.3d 516 (2d Cir. 1998) ........................................ 17

Hudacs v. Frito-Lay, Inc., 90 N.Y.2d 342, 660 N.Y.S.2d 700, 683 N.E.2d 322 (1997) .............. 21

James v. Countrywide Financial Corp., No. 10 CV 4953, 2012 U.S. Dist. LEXIS 12838
    (E.D.N.Y. Feb. 2, 2012) ...................................................................... 13

Joza v. WW JFK LLC, No. 07-CV-4153, 2010 U.S. Dist. LEXIS 94419 .................................. 13

Kellar v. Summit Seating, Inc., 664 F.3d 169 (7th Cir. 2011) ...................................... 18

Kuebel v. Black & Decker Inc., 643 F.3d 352 (2d Cir. 2011) ........................................ 11

Lewis v. Alert Ambulette Service Corp., No. 11-CV-442, 2012 U.S. Dist. LEXIS 6269
    (E.D.N.Y. Jan. 19, 2012) ..................................................................... 10

Louis Kaplan Int'l Inc. v. Photocribe Technologies, Inc., No. 06 Civ. 4005, 2012 U.S. Dist.
    LEXIS 19233 (S.D.N.Y. Feb. 15, 2012) .......................................................... 6

McLean v. Garage Management Corp., 819 F. Supp. 2d 332 (S.D.N.Y. 2011)............................. 7

Mendez v. Radec Corp., 232 F.R.D. 78 (W.D.N.Y. 2005)........................................................... 14

Minizza v. Stone Container Corp., 842 F.2d 1456 (3d Cir. 1988)................................................. 8

Nyame v. Bronx Lebanon Hospital Center, No. 08 Civ. 9656, 2010 U.S. Dist. LEXIS 33949
    (S.D.N.Y. Mar. 31, 2010) ....................................................................................................... 19

Seever v. Carrols Corp., 528 F. Supp. 2d 159 (W.D.N.Y. 2007) ................................................ 13

Singh v. City of New York, 524 F.3d 361 (2d Cir. 2008) ............................................................ 15

Sosnowy v. A. Perri Farms, Inc., 764 F. Supp. 2d 457 (E.D.N.Y. 2011)............................... 19, 21

Tennessee Coal, Iron & Railroad Co. v. Muscoda Local 123, 321 U.S. 590,
    64 S. Ct. 698, 88 L. Ed. 949 (1944) ...................................................................................... 15

Wolman v. Catholic Health System of Long Island, Inc., No. 10-CV-1326,
    2012 U.S. Dist. LEXIS 21654 (E.D.N.Y. Feb. 16, 2012)................................................. 7, 14

Zhong v. August August Corp., 498 F. Supp. 2d 625 (S.D.N.Y. 2007) ....................................... 13

Defendants Embrace Technologies, Inc. ("ETI"), Embrace Infrastructure, LLC ("LLC") and Michael Einstein (collectively "defendants") submit this memorandum of law in support of their motion for summary judgment as to each and every count alleged in the Amended Complaint filed by plaintiff Gregory Sherald ("plaintiff") in the above-captioned wage and hour case. Because none of the claims advanced by plaintiff give rise to a genuine issue of material fact, defendants' motion should be granted.

## I.   PRELIMINARY STATEMENT

By way of this action, plaintiff seeks to recover various forms of compensation he claims to have been unlawfully denied in the course of his employment by ETI. His five causes of action arise under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and New York's wage and hour laws. Discovery has revealed that none of plaintiff's claims are trial-worthy.

The First and Third Causes of Action rest on the allegation that defendants miscalculated plaintiff's "regular rate" of pay, and hence his overtime rate of pay, by failing to account for certain elements of compensation, such as overtime premiums, vacation and holiday pay, and discretionary bonuses, resulting in an underpayment for overtime hours worked by plaintiff in excess of forty (40) in a week. This claim fails on the law because each compensation component that defendants left out of the "regular rate" calculation is the subject of an express statutory exclusion. As such, defendants properly calculated plaintiff's "regular rate" of pay in accordance with statutory mandates and, therefore, the First and Third Causes of Action are unsustainable.

The Second Cause of Action accuses defendants of failing to compensate plaintiff for alleged "off-the-clock" work he claims to have performed before the start of his shift and during unpaid meal breaks. This claim likewise fails on the law, in that the pre-shift activities plaintiff allegedly performed do not constitute "work," and so the time is non-compensable, and he lacks evidence sufficient to adequately quantify the extent or frequency of any interrupted or missed meal breaks. Even more glaring, but equally fatal to plaintiff's off-the-clock claims, is the absence of evidence that would even begin to suggest defendants had actual or constructive knowledge of the work plaintiff now says he was doing pre-shift and/or during meal breaks but admittedly did not report.

Plaintiff's Fourth Cause of Action alleges that defendants violated New York's Labor Law by failing to pay out the vacation time he accrued but ostensibly did not use in 2005, 2006 and 2007. This claim is in large measure factually unsustainable because plaintiff admittedly enjoyed no right to vacation time in 2005 and used all of his vacation allotment for 2007. Although plaintiff avers that in 2006 he only took one of the two weeks of vacation time he allegedly accrued for that year, there was no policy or practice at ETI or LLC whereby unused vacation time was cashed out annually; this undisputed fact renders the Fourth Cause of Action unsustainable as a matter of law.

Finally, the Fifth Cause of Action purports to cast plaintiff's voluntary use of his own personal tools and equipment in connection with the performance of his job duties—a practice that, if it occurred, was unbeknownst to defendants—as an unlawful "deduction" from wages in violation of New York Labor Law § 193. However, there was no wage "deduction"—in fact, plaintiff's wages were not even implicated by his use of personal tools and equipment—hence there was no statutory violation.

2

For these reasons, as more fully articulated below, none of the five causes of actions alleged by plaintiff in his Amended Complaint are capable of substantiation. His claims are therefore properly disposed of on summary judgment.

## II.   STATEMENT OF FACTS

The following facts, to the extent material, are undisputed. Certain non-material facts are included to provide context.[1]

ETI is a telecommunications company that was founded by Michael Einstein in late 2001 to sell telephone systems and provide cabling and network services to commercial customers in New York City and vicinity. (Einstein Dep. at 11-12). Within a few years after founding ETI, Mr. Einstein established a sister company, LLC, "primarily to do infrastructure wiring" as well as "telephone system deployments." (Einstein Dep. at 23-24). ETI and LLC shared employees and otherwise operated as a single entity. (Einstein Dep. at 32, 43-44, 46-49). Although only LLC was signatory to collective bargaining agreements with the Communication Workers of America, Local 1106 ("the Union") (Defs' Exh's 2, 3), those agreements established the terms and conditions of employment for the technicians employed by both entities. (Einstein Dep. at 80-81). For ease of administration, payroll for technicians employed by both ETI and LLC was processed through LLC. (Einstein Dep. at 24, 51-52, Einstein Aff. ¶ 2).

Pursuant to an offer letter dated August 24, 2005, ETI hired plaintiff to serve as a technician at an annualized salary of $42,500.00. (Pltf's Exh. 1; Einstein Dep. at 34-35). As provided for in the offer letter, following a 90-day probationary period, plaintiff's annual pay

---

[1] Citations to the record take the following forms: "Einstein Dep. at __" refers to the deposition of Michael Einstein, conducted on April 9, 2012; "Sherald Dep. at __" refers to the deposition of plaintiff Gregory Sherald, conducted on April 6, 2012; "Pltf's Exh. __" refers to an exhibit introduced during the course of Mr. Einstein's deposition; and, "Defs' Exh. __" refers to an exhibit introduced during the course of plaintiff's deposition. All such evidence is authenticated by, and annexed to, the Affidavit of Lawrence Peikes, filed herewith.

rate was increased to $45,000.00. (Pltf's Exh. 1; Einstein Dep. at 35-36). In addition to his base compensation, plaintiff also received overtime premium pay for hours worked in excess of forty (40) in a week. (Pltf's Exh. 11, Einstein Aff. ¶ 6).[2] To calculate the overtime premium, plaintiff's annual salary was converted to an hourly rate, which rate was multiplied by one-and-a-half. (Einstein Aff. ¶ 6). Plaintiff's starting salary of $42,500.00 per annum translated to an hourly rate of $20.43; this rate increased to $21.63 effective November 28, 2005 when, per the offer letter, his annual salary was adjusted upward to $45,000.00; defendants thereafter raised plaintiff's hourly rate to $22.06 as of September 8, 2006, $22.50 as of March 23, 2007, and $22.95 as of February 22, 2008. (Pltf's Exh. 11). These adjustments were made pursuant to and in accordance with the terms of the operative collective bargaining agreement. (Einstein Aff. ¶ 3).

As a technician, plaintiff was generally responsible for installing and maintaining telephone systems and performing related functions. (Sherald Dep. at 26; Einstein Dep. at 46-48). Technicians ordinarily worked in the field without direct managerial monitoring or oversight. (Sherald Dep. at 26-30; Einstein Aff. ¶ 5). For most of his tenure, and as specified in the collective bargaining agreements, plaintiff's regular work shift was 8:00 a.m. to 5:00 p.m. with an unpaid one (1) hour lunch break. (Sherald Dep. at 72-73, 98-99; Einstein Dep. at 54-55; Einstein Aff. ¶ 4; Defs' Exh. 2, at p. 12; Defs' Exh. 3, at p. 12). On occasion, particularly when plaintiff was assigned to work on construction jobs run by union contractors, he would be required to start work before 8:00 a.m., but in those instances there was a concomitant adjustment to his end time so that the total hours worked in a given day remained at eight (8). (Sherald Dep. at 74-75; Einstein Dep. at 76).

---

[2] "Einstein Aff." refers to the affidavit of Michael Einstein, sworn to on May 17, 2012.

Defendants' practice was to credit technicians for a full eight (8) hour work day even when they completed their assigned jobs, and were released from duty, before the scheduled stop time. (Sherald Dep. at 74-75; Einstein Dep. at 60-61, Einstein Aff. ¶ 4). Plaintiff estimated this happened approximately four (4) times per month. (Sherald Dep. at 89-90). There were also occasions when plaintiff was required to work beyond 5:00 p.m. When this occurred, plaintiff would report his overtime hours to either Ron Bugge, Chief Operating Officer, or Michele Cintron, Operations Manager. (Sherald Dep. at 73-76; Einstein Aff. ¶ 5). Plaintiff admitted, and payroll records confirm, that plaintiff was always paid at time-and-a-half his regular hourly rate for the overtime hours he reported. (Sherald Dep. at 86-88; Pltf's Exh. 11; Einstein Aff. ¶ 6, Exh. 1).

Plaintiff remained in ETI's employ until April 16, 2009, when his employment was terminated in connection with a reduction-in-force occasioned by a downturn in business. (Sherald Dep. at 71-72; Einstein Dep. at 126-27). He was paid through April 24, 2009, reflecting a full week's salary (even though plaintiff only worked four (4) days during this payroll period), and was also paid for forty (40) hours of vacation time, which was actually more than plaintiff had accrued to that point. (Sherald Dep. at 64-65; Pltf's Exh's 4, 5, 10, 11; Einstein Dep. at 161, 165; Einstein Aff. ¶ 12).

## III.   ARGUMENT

"Summary judgment must be granted where the pleadings, the discovery and disclosure materials on file, and any affidavits show 'that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law.'" Brown v. Eli Lilly and Co., 654 F.3d 347, 358 (2d Cir. 2011)(quoting Fed. R. Civ. P. 56(a)). "A fact is material only if it 'might affect the outcome of the suit under the governing law.' A dispute is genuine if 'the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Louis Kaplan Int'l Inc. v. Photocribe Technologies, Inc.</u>, No. 06 Civ. 4005, 2012 U.S. Dist. LEXIS 19233, at *27 (S.D.N.Y. Feb. 15, 2012)(Griesa, J.)(quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.  More specifically, it 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and 'may not rely on conclusory allegations or unsubstantiated speculation.'  Where no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment must be granted." <u>Brown</u>, 654 F.3d at 358 (citations omitted).

Evidence supportive of plaintiff's claims is less than slight, it is non-existent; defendants are therefore entitled to summary judgment.

**POINT I:**
**PLAINTIFF'S CLAIMS ALLEGING UNDERPAYMENT OF OVERTIME**
**COMPENSATION DUE TO A MISCALCULATION OF THE "REGULAR RATE" FAIL**
**AS A MATTER OF LAW**

The First and Third Causes of Action allege violations of the overtime pay requirements of the FLSA and analogous provisions of the New York Labor Law, respectively.  In particular, plaintiff alleges that defendants improperly excluded certain forms of compensation when calculating the "regular rate," which in turn determines the overtime rate of compensation for hours worked in excess of forty (40) in a week. <u>See</u> 29 C.F.R. §§ 778.107, *et seq*.  Plaintiff's

claim is unsustainable because, as demonstrated below, the exclusions alleged to be improper were in fact statutorily permitted.[3]

"Overtime pay is calculated by applying a multiplier of one and one half to an employee's 'regular rate' of pay. Generally, the regular rate of pay 'is determined by dividing his total remuneration for employment (*except statutory exclusions*) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.'" McLean v. Garage Management Corp., 819 F. Supp. 2d 332, 339 (S.D.N.Y. 2011)(emphasis added). See also 12 NYCRR § 142-2.16 (defining the term "regular rate" for purposes of calculating overtime pay under New York's Labor Law as "the amount that the employee is regularly paid for each hour of work").

Plaintiff contends the regular rate defendants used to calculate the overtime premium was unlawfully deflated because it was exclusively a function of his designated hourly rate of pay rather than his gross pay. More specifically, plaintiff would back into a proposed regular rate by using his annualized gross pay in a given year as a starting point, dividing that figure by fifty (50) to come up with a weekly amount and then dividing the sum by forty (40) to arrive at an hourly rate. (See Amended Complaint ¶¶ 24, 27, 49, 52). The problem with this approach is that plaintiff's gross pay included various forms of compensation that are expressly excluded from the regular rate, such as overtime compensation paid at premium rates, 29 U.S.C. § 207(e)(5)(excluding from the regular rate "extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are in excess of eight in a day or in excess of the maximum workweek applicable to such employee

---

[3] State overtime pay claims "are analyzed under the same standard" as FLSA overtime pay claims. Wolman v. Catholic Health System of Long Island, Inc., No. 10-CV-1326, 2012 U.S. Dist. LEXIS 21654, at *27 n.8 (E.D.N.Y. Feb. 16, 2012). Accordingly, the First and Third Causes of Action are addressed collectively.

... or in excess of the employee's normal working hours or regular working hours, as the case may be"), and vacation and holiday pay, 29 U.S.C. § 207(e)(2)(excluding from the regular rate "payments for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause..."); Chavez v. City of Albuquerque, 630 F.3d 1300, 1308 (10th Cir. 2011)("Compensation for vacation and sick days that are actually taken is not part of the regular rate.").

Plaintiff's gross pay also included occasional bonuses that are, under the circumstances, likewise excluded when calculating the regular rate. Thus, in 2006, plaintiff and his fellow technicians received two $250.00 payments as a signing bonus awarded pursuant to the terms of a newly negotiated collective bargaining agreement between LLC and the Union. (Defs' Exh. 2, at p. 22; Pltf's Exh. 3; Einstein Dep. at 93-95, Einstein Aff. ¶ 7). Bonus payments of this sort, that are not awarded to an employee "as compensation for his hours of employment," fall within an express statutory exclusion, 29 U.S.C. § 207(e)(2), and so are not factored into the regular rate calculation. Minizza v. Stone Container Corp., 842 F.2d 1456, 1462-63 (3d Cir. 1988)(holding that lump-sum payments negotiated as a trade-off for wage increases and an inducement to ratification of collective bargaining agreement "share the essential characteristic with the other types of compensation specifically included in section 207(e)(2) of not being compensation for hours worked or services rendered" and therefore "fall within the language of the exception and are excluded for purposes of calculating overtime compensation rates"). See also Chavez, 630 F.3d at 1312 ("Sums paid as a reward for service, 'the amounts of which are not measured by or dependent on hours worked, production, or efficiency,' are not part of the regular rate.").

8

Defendants also awarded plaintiff a year-end bonus of $1000.00 in late 2007 and again in late 2008. (Pltf's Exh's 5, 6). As Mr. Einstein explained, these payments were made because "we had a good year, so we wanted to reward our employees" (Einstein Dep. at 110), "to share in our company's success" (Einstein Dep. at 115), "[w]e wanted to share in our profitability to our employees" (Einstein Dep. at 104, 114); that is, the bonuses were entirely discretionary. (Einstein Aff. ¶ 8). Plaintiff does not contend otherwise. (Sherald Dep. at 97-98). It is therefore undisputed that, in each instance, "both the fact that the payment [wa]s to be made and the amount of the payment [we]re determined at the sole discretion of the employer at or near the end of the period and not pursuant to any prior contract, agreement or promise causing the employee to expect such payments regularly," meaning the year-end bonuses were properly excluded from the regular rate. 29 U.S.C. § 207(e)(3).

Thus, the undisputed facts conclusively establish that defendants calculated plaintiff's regular rate in precisely the manner contemplated by the FLSA and New York's wage and hour laws. "The regular rate is 'the hourly rate actually paid for the normal, non-overtime workweek.' It is determined by looking to the employment arrangement. The regular rate may include more than just an employee's contractually-designated hourly wage if the employee is, in fact, paid more than that hourly wage." Chavez, 630 F.3d at 1304-05. However, the First and Third Causes of Action rest on the contention that defendants did not include in the calculation of plaintiff's regular rate various forms of compensation that, as demonstrated above, are expressly excluded from such calculation by operation of 29 U.S.C. § 207(e). Those claims are therefore unsustainable and properly disposed of on summary judgment.

**POINT II:**
**PLAINTIFF'S "OFF-THE-CLOCK" CLAIMS FAIL AS A MATTER OF LAW**

Plaintiff's Second Cause of Action is entitled "Claim for Overtime Wages re Skipped Meal Breaks" and is premised on the general allegation that "Defendants regularly failed to pay Plaintiff for periods of overtime work that he performed each week above and beyond 40 hours, some of which overtime related to skipped or interrupted meal breaks." (Amended Complaint ¶ 35). The balance of the overtime in question apparently concerns work plaintiff allegedly performed before the start of his scheduled shift.

"To establish an employer's liability under the FLSA for unpaid overtime, a plaintiff must prove: 1) that he performed work for which he was not properly compensated; and 2) that the employer had actual or constructive knowledge of that work." Lewis v. Alert Ambulette Service Corp., No. 11-CV-442, 2012 U.S. Dist. LEXIS 6269, at *10 (E.D.N.Y. Jan. 19, 2012).[4] Plaintiff cannot satisfy these elements of proof.

### A.   Plaintiff Cannot Prove He Performed Work For Which He Was Not Properly Compensated.

The threshold element of a claim for unpaid overtime—requiring proof that the plaintiff "performed work for which he was not properly compensated," Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011)—has two component parts: (i) that the time in question was dedicated to compensable "work," and (ii) "the *amount* of [the plaintiff's] uncompensated work (in essence, his damages) ..." Id. (emphasis in original). Because the pre-shift activities plaintiff claims to have performed on a daily basis do not constitute "work," and plaintiff lacks competent proof as to the amount of work allegedly performed during unpaid meal breaks, his off-the-clock

---

[4] "New York State labor regulations substantially incorporate and adopt the FLSA's overtime regulations. As such, the same elements are required to prove plaintiffs' claim under New York labor law as under federal law." Id. at *12-13.

claims are unsustainable in all respects.  We begin with the claim for uncompensated meal breaks.

### 1.    **Meal Break Claim**

The extent of an "off-the-clock" plaintiff's threshold burden of proving the "amount" of uncompensated work performed varies depending on whether the employer satisfied its statutory recordkeeping obligations.  Drawing on the U.S. Supreme Court's decision in <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 66 S. Ct. 1187, 90 L. Ed. 1414 (1946), the Second Circuit recently explained that, "at summary judgment, if an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of the uncompensated work as a matter of just and reasonable inference,'.... [I]t is possible for a plaintiff to meet this burden through estimates based on his own recollection." <u>Kuebel v. Black & Decker Inc.</u>, 643 F.3d 352, 362 (2d Cir. 2011).  Where the <u>Anderson</u> burden applies, and is met by the plaintiff, the employer must "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." <u>Anderson</u>, 328 U.S. at 687-88.

In <u>Kuebel</u>, the Second Circuit determined that "the fact that an employee is required to submit his own timesheets does not necessarily preclude him from invoking <u>Anderson's</u> standard when those records appear to be inaccurate." <u>Id.</u> at 363.  "At least where the employee's falsifications were carried out at the instruction of the employer or the employer's agents, the employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets." <u>Id.</u>  The Second Circuit ultimately held in <u>Kuebel</u> "that because [the plaintiff] has presented evidence indicating that his employer's records are inaccurate—and although it was he who purposefully rendered them inaccurate, he did so at his managers'

direction—the district court should have afforded [him] the benefit of <u>Anderson's</u> 'just and reasonable inference' standard." <u>Id.</u>

In the instant case, blame for any inaccuracy in defendants' time records, in particular allegedly unrecorded overtime hours, falls squarely and exclusively on plaintiff's shoulders. As noted, for payroll purposes, and the sake of simplicity, defendants credited technicians with a minimum of eight (8) working hours for each work day, regardless of whether they actually worked until 5:00 p.m. Because technicians toiled in the field without direct supervision or oversight, defendants relied on them to accurately report any hours worked in excess of eight (8) in a given day. (Einstein Dep. at 62-65, 75; Einstein Aff. ¶ 5). It is undisputed that plaintiff was paid at the overtime rate of time-and-a-half for all reported hours over forty (40) in a week. (Einstein Aff. ¶ 6, Exh. 1; Pltf's Exh. 11).

At least as it relates to overtime hours, then, plaintiff, like his counterparts in <u>Kuebel</u>, was responsible for recording his own working time. Also, as in <u>Kuebel</u>, plaintiff admittedly did not report his alleged off-the-clock work to management. (Sherald Dep. at 82-83, 94). However, as distinguished from <u>Kuebel</u>, plaintiff does not allege, nor can he, that defendants "caused the inaccuracies in his timesheets" by, for example, "convey[ing] to him that he was not to record overtime no matter how many hours he actually worked." <u>Kuebel</u>, 643 F.3d at 363.

"Of course, where, as here, 'it is undisputed that the employer's record-keeping complied with the requirements of the FLSA and New York Labor Law, and that the plaintiff's time records were maintained and paid exactly as plaintiff fashioned them, meaning that any inaccuracies in the employer's records are solely due to the plaintiff's deliberate failure to accurately report the time []he worked,' the <u>Anderson</u> burden of production shifting is not applied because 'the time record 'deficiencies' alleged by the employee are admittedly and

voluntarily self-created.'" Joza v. WW JFK LLC, No. 07-CV-4153, 2010 U.S. Dist. LEXIS 94419, at *21 (E.D.N.Y. Sept. 10, 2010)(quoting Seever v. Carrols Corp., 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007)).

In such circumstances, "a plaintiff fails to meet [his] burden where []he proves unable 'to provide specific facts establishing when, and for how long, []he performed the off-the-clock tasks for which []he now seeks compensation' and where 'the undisputed fact is that plaintiff never reported this work on [his] timesheets, and that plaintiff's allegations rest solely upon [his] own bare recollections.'" Joza, at *22. See also James v. Countrywide Financial Corp., No. 10 CV 4953, 2012 U.S. Dist. LEXIS 12838, at *58-59 (E.D.N.Y. Feb. 2, 2012)("'Simply stating that Plaintiffs were not paid for overtime work does not sufficiently allege a violation of Section 7 of the FLSA.'")(quoting Zhong v. August August Corp., 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)). That is precisely the case with respect to plaintiff's meal break claim.

Plaintiff did not maintain records reflecting when he missed a meal break, or to what extent any particular meal break was interrupted. (Sherald Dep. at 94). Given this "inability to provide specific facts establishing when, and for how long, [he] performed off-the-clock tasks for which [he] now seek[s] compensation, the undisputed fact that plaintiff[] never reported this work [to defendants], and the fact that plaintiff[']s allegations rest solely upon [his] own bare recollections, plaintiff[] cannot meet [his] ultimate burden to demonstrate that [he] performed work for [defendants] about which [defendants] were aware, and for which [he was] not compensated." Seevers, 528 F. Supp. 2d at 170.

The only specific testimony plaintiff could muster regarding the extent of any meal break interruptions concerned occasions when he received a call from the office while he was taking lunch. On those occasions, plaintiff explained, he would address the call if a simple and quick

resolution was at hand, otherwise he would return the call after his meal break. (Sherald Dep. at 92-93). However, "interrupted meal breaks are only compensable if an employee is required 'to give up a substantial measure of his time and effort.'" Wolman v. Catholic Health System of Long Island, Inc., No. 10-CV-1326, 2012 U.S. Dist. LEXIS 21654, at *29-30 (E.D.N.Y. Feb. 16, 2012). Brief interruptions of the sort described by plaintiff do not convert an otherwise non-compensable meal break into compensable working time. Id., at *30 (complaint failed to state a cognizable claim that meal break "interruptions are compensable" where pleading was "void of any facts regarding the nature and frequency of these interruptions during the relevant time period or how often meal breaks were missed altogether as opposed to just interrupted"). See also Mendez v. Radec Corp., 232 F.R.D. 78, 84 (W.D.N.Y. 2005)("If it is determined that lunch breaks were rarely interrupted and only for brief periods, then no compensation would be required.").

## 2.    Pre-Shift Claim

While plaintiff was able to quantify his alleged pre-shift off-the-clock claim on a collective basis—plaintiff avers that he routinely parked his company-provided van outside the office at around 7:30 a.m. and spent the next half-hour doing paperwork or cleaning out the vehicle before reporting to work just after the regular 8:00 a.m. start time (Sherald Dep. at 79-81)—none of this time was dedicated to compensable "work," which is defined "as exertion or loss of an employee's time that is (1) controlled or required by an employer, (2) pursued necessarily and primarily for the employer's benefit, and (3) if performed outside the scheduled work time, an integral and indispensable part of the employee's principal activities." Chao v. Gotham Registry, Inc., 514 F.3d 280, 285 (2d Cir. 2008).

Some of the paperwork plaintiff claims to have prepared before the start of his shift was, by plaintiff's own admission, primarily for his own personal benefit and neither required by, nor shared with, defendants. (Sherald Dep. at 80-82). Time spent by plaintiff on such personal endeavors does not constitute "work" within the meaning of the FLSA, and so is not compensable. See Singh v. City of New York, 524 F.3d 361, 367 (2d Cir. 2008)("Though Congress has never explicitly defined what constitutes work under the FLSA, the Supreme Court has generally described work as "physical or mental exertion (whether burdensome or not) *controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business*")(emphasis added)(quoting Tennessee Coal, Iron & Railroad Co. v. Muscoda Local 123, 321 U.S. 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 (1944)).

Plaintiff also claims to have dedicated some unquantifiable portion of the half-hour he allegedly spent in his van outside the office each morning to company-required paperwork. (Sherald Dep. at 82). However, plaintiff does not claim he was required to perform this task outside of normal working hours. In fact, he was free to fill out his paperwork whenever he so desired and was expected to do so during normal working hours. (Einstein Aff. ¶ 10). As such, this time is also non-compensable. Kuebel, 643 F.3d at 360-61 (commuting time did not become compensable by virtue of plaintiff's performance of administrative tasks at home where plaintiff had flexibility in deciding when to complete those tasks and was not required to do so pre- or post-shift); Wolman, at *32 (plaintiffs' allegations that they spent 15-30 minutes before the start of their shift preparing assignments and reading reports, and two hours after each shift "writing and uploading reports," were "insufficient to state a claim that the time is compensable because the [complaint] contains no facts indicating whether it was necessary for [plaintiffs] to complete these tasks outside of their scheduled shifts").

Equally non-compensable is the time plaintiff claims to have spent cleaning out the van. As with the paperwork, plaintiff was neither required nor expected to tidy up his van before the start of his scheduled work shift. (Einstein Aff. ¶ 10). Be that as it may, the Employment Commute Flexibility Act expressly provides that "activities performed by an employee which are incidental to the use of [the employer's] vehicle for commuting shall not be considered part of the employee's principal activities." 29 U.S.C. § 254(a). Routine cleaning of a company vehicle is plainly incidental to its use, Aiken v. City of Memphis, 190 F.3d 753, 759 (6th Cir. 1999)("Keeping vehicles clean and scheduling maintenance to be done at the city's expense are hardly arduous and precisely the sort of activities Congress had in mind when it used the phrase 'incidental to the use of the employer's vehicle'"), and in any event was not an integral and indispensable component of plaintiff's job as a technician. Espinoza v. County of Fresno, No. 1:07-cv-1145, 2011 U.S. Dist. LEXIS 85401, at *23-24 (E.D. Cal. Aug. 3, 2011)(police officers' "off-duty washing and maintenance of their take home patrol vehicles" was "not integral to on-the-job performance of the vehicles" and, consequently, time dedicated to such endeavors was "not compensable under the FLSA."). Plaintiff is therefore not entitled to compensation for off-the-clock time allegedly spent cleaning his company-provided van. Chambers v. Sears Roebuck & Co., 2011 U.S. App. LEXIS 12150, at *53-56 (5th Cir. June 15, 2011)(holding that time spent by plaintiff cleaning out company vehicle was not compensable).

Thus, none of the tasks plaintiff claims to have performed pre-shift constitute compensable "work."

### B. Plaintiff Cannot Prove Defendants Had Actual Or Constructive Knowledge Of His Alleged Off-The-Clock Work.

As the Second Circuit recently confirmed, "[t]o prevail on his off-the-clock claims [plaintiff] also must prove that [defendants] *had actual or constructive knowledge that he was*

*performing uncompensated work.*" Kuebel, 643 F.3d at 365 (emphasis added).  The undisputed facts conclusively show that defendants lacked either actual or constructive knowledge that plaintiff skipped meal breaks or performed work while parked outside the office in his company van prior to the start of his shift.

Plaintiff admittedly neglected to tell Mr. Einstein or anyone else associated with ETI or LLC about the off-the-clock work he claims to have performed, and for which he now seeks compensation, and he admittedly never complained about not being compensated for such work. (Sherald Dep. at 82-83, 94-96, 99).  Plaintiff further admits that when he allegedly skipped meal breaks, he did so of his own volition and not at defendants' direction. (Sherald Dep. at 101-02, Einstein Aff. ¶ 9).  Likewise, to the extent plaintiff did any work before arriving in the office just after 8:00 a.m. each morning he did so of his own accord. (Einstein Aff. ¶ 10).  As a result, defendants knew nothing about the alleged off-the-clock work that is the subject of the Second Cause of Action. (Einstein Aff. ¶¶ 9, 10).  "While an employer must pay for work it suffers or permits, an employer cannot suffer or permit an employee to perform services about which the employer knows nothing." Holzapfel v. Town of Newburgh, 145 F.3d 516, 524 (2d Cir. 1998).

To be sure, "[a]n employer need not have actual knowledge of such off-site work; constructive knowledge will suffice." Id. Constructive knowledge is typically established upon a showing that the plaintiff was told not to report overtime hours or discouraged from putting in overtime when the need arose, see Kuebel, 643 F.3d at 363, but plaintiff does not accuse defendants of engaging in such practices.  On the contrary, it is undisputed that plaintiff was regularly paid at overtime premium rates for reported hours in excess of forty (40) in a week. (Sherald Dep. at 86-88; Einstein Aff. ¶ 6, Exh. 1; Pltf's Exh. 11).  Constructive knowledge cannot be inferred in such circumstances, Joza, at *30-31 (rejecting claim for non-payment of

17

unreported overtime hours where employer had no knowledge of alleged off-the-clock work and plaintiff was compensated for all overtime hours actually reported), especially where, as here, plaintiff's job "involved a lot of travelling where he could not be monitored easily by his supervisors," Ellis v. Common Wealth Worldwide Chauffeured Transportation of NY, LLC, No. 10-CV-1741, 2012 U.S. Dist. LEXIS 40288, at *29 (E.D.N.Y. Mar. 23, 2012), and his "behavior raised no red flags" suggesting he put in unreported overtime hours. Kellar v. Summit Seating, Inc., 664 F.3d 169, 177-78 (7th Cir. 2011).

Any conceivable doubt on the point is extinguished by the terms of the collective bargaining agreements that were in effect during plaintiff's tenure. Both expressly provide in Article VIII, Section 6 that: "The normal hours of work shall be 8 a.m. to 5 p.m. with one (1) hour unpaid lunch period." (Defs' Exh. 2, at p. 12; Defs' Exh. 3, at p. 12). Given this contractual mandate, defendants could not possibly have had reason to suspect that plaintiff, or any other technician, performed work before the start of his scheduled shift or skipped all or part of his meal break in the absence of a managerial directive to do so. (Einstein Aff. ¶¶ 9, 10).

In the end, plaintiff's off-the-clock claims are undone by his "inability to establish that []he was prevented physically, practically, or otherwise from reporting [his] supposedly unpaid overtime." Joza, at *24. Precedent and logic teach that "'an employer must have an opportunity to comply with the provisions of the FLSA,' and 'where the acts of an employee prevent an employer from acquiring knowledge,' here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of the FLSA's overtime requirements. In this case, defendants had no knowledge (actual or constructive) of [plaintiff's] alleged extra overtime work. In fact, it was [plaintiff] [him]self who prevented defendants from learning about [his] alleged extra overtime work. In such

18

circumstances, proof of wage and hour law violations comes up short." <u>Id.</u> at *32-33 (quoting

<u>Forrester Roth's I.G.A. Foodliner, Inc.</u>, 646 F.2d 413, 414-15 (9th Cir. 1981)).

The Second Cause of Action should therefore be dismissed.

**POINT III:**
**PLAINTIFF ENJOYS NO RIGHT TO PAYMENT OF ACCRUED BUT UNUSED**
**VACATION TIME AND THEREFORE THE FOURTH CAUSE OF ACTION FAILS**

The Fourth Cause of Action alleges that defendants violated an unspecified provision of

the New York Labor Law by failing to pay plaintiff for 23 days of vacation he allegedly accrued

in 2005, 2006 and 2007 but supposedly had yet to use as of the time his employment came to an

end on April 16, 2009.  (Amended Complaint ¶ 67).  However, as his offer letter makes clear,

plaintiff was not eligible for vacation time during the first six months of his employment (i.e.,

August 25, 2005 through February 25, 2006) (Pltf's Exh. 1; Einstein Dep. at 58-59), so there was

no accrual for 2005.  (Einstein Aff. ¶ 11).  Plaintiff further admitted he used one week of

vacation in 2006 and two weeks of vacation in 2007 (Sherald Dep. at 36-38), an admission that

comports with defendants' payroll records.  (Pltf's Exh. 11; Einstein Aff. ¶ 11).  At most, then,

plaintiff has a claim for one week of unused vacation time.  But even that claim is legally

untenable.

The controlling "cases state that whether payment for accrued vacation is appropriate

depends ultimately upon the agreement between an employee and his employer.  To state a claim

under New York Labor Law, [p]laintiff must allege that he is entitled either to vacation pay or to

payment in lieu of vacation time under his employment agreement with [defendants]." <u>Nyame v.</u>

<u>Bronx Lebanon Hospital Center</u>, No. 08 Civ. 9656, 2010 U.S. Dist. LEXIS 33949, at *19

(S.D.N.Y. Mar. 31, 2010).  <u>See also</u> <u>Sosnowy v. A. Perri Farms, Inc.</u>, 764 F. Supp. 2d 457, 476

(E.D.N.Y. 2011)(the Labor Law "codifies the general understanding that vacation and sick pay

19

are purely matters of contract between an employer and employee."). Plaintiff makes no showing of any such contractual entitlement.

Neither plaintiff's offer letter nor the collective bargaining agreements setting forth the terms and conditions of employment for defendants' technicians provide for an annual payout of accrued but unused vacation. (Defs' Exh's 1, 2, 3). Conceding as much, plaintiff testified that he conveniently assumed any unused vacation time would be cashed out or carried over to the ensuing year, but he could point to no policy, practice or contractual instrument imposing such an obligation on defendants. (Sherald Dep. at 38-39, 52-55). In fact, as a matter of practice and protocol, ETI and LLC did not cash out, or allow employees to carry over, unused vacation time. (Einstein Aff. ¶ 11). This undisputed fact proves fatal to plaintiff's vacation pay claim. Nyame, at *19-20.

Because plaintiff does not, and cannot, allege that defendants expressly or impliedly promised to pay out accrued but unused vacation time annually, plaintiff's Fourth Cause of Action necessarily fails on the law.

### POINT IV:
### PLAINTIFF'S FIFTH CAUSE OF ACTION ALLEGING "IMPROPER CHARGES AGAINST PAY" IS UNSUSTAINABLE AS A MATTER OF LAW

By way of the Fifth Cause of Action, plaintiff avers that defendants somehow made an unlawful "deduction" from his wages, in violation of New York Labor Law § 193, by unknowingly allowing him to use certain of his own tools and equipment in the performance of his job duties. This claim is legally baseless.

Section 193 "provides that 'no employer shall make any deduction from the wages of an employee' except those permitted by law or authorized by the employee. 'Wages' are defined in Labor Law § 190(1) as the 'earnings of an employee for labor or services rendered, regardless of

whether the amount is determined on a time, piece, commission or other basis.'" Sosnowy, 764 F. Supp. 2d at 470.  Fundamentally, "Section 193 was intended to place the risk of loss for such things as damaged or spoiled merchandise on the employer rather than the employee." Hudacs v. Frito-Lay, Inc., 90 N.Y.2d 342, 349, 660 N.Y.S.2d 700, 683 N.E.2d 322 (1997).  No such concern is implicated here.

Thus, plaintiff does not claim that defendants directed him to purchase tools or equipment at his own expense.  To the contrary, technicians were given a company credit card to use in the event it proved necessary to purchase items for use on the job.  (Sherald Dep. at 99-100; Einstein Dep. at 171, 175).  It is not alleged that defendants took deductions from plaintiff's wages in order to recoup these costs, nor can it be.  (Einstein Dep. at 169).  Significantly, moreover, plaintiff admitted he did not seek reimbursement for the cost of, or wear and tear to, his personal items; and he further admitted that he retained all of these personal items after his employment ended.  (Sherald Dep. at 83-86).  "A 'deduction' literally is an act of taking away or subtraction." Angello v. Labor Ready, Inc., 7 N.Y.3d 579, 825 N.Y.S.2d 674, 859 N.E.2d 480 (2006). Plaintiff experienced nothing of the sort.

Clearly, then, plaintiff's use of his own tools and equipment did not effectuate an impermissible "deduction" from wages and, consequently, the Fifth Cause of Action cannot stand.

## IV.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment should be granted and plaintiff's Amended Complaint dismissed in its entirety, with prejudice.

Dated: New York, New York
      May 18, 2012

                              Respectfully submitted,

                              WIGGIN AND DANA LLP
                              450 Lexington Avenue
                              Suite 3800
                              New York, NY 10017
                              (212) 490-1700
                              (212) 490-0536 (fax)

                              By:_____
                                  Lawrence Peikes (LP-2478)
                                  lpeikes@wiggin.com

                              Attorneys for Defendants
                              EMBRACE TECHNOLOGIES INC.,
                              EMBRACE    INFRASTRUCTURE,    LLC
                              and MICHAEL EINSTEIN

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2012, the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.


_____
Lawrence Peikes

22016\1\2701084.2

23