Lawrence Peikes (LP-2478)
Wiggin and Dana LLP
450 Lexington Avenue
Suite 3800
New York, NY 10017
(212) 490-1700
(212) 490-0536 (fax)

Attorneys for Defendants
EMBRACE TECHNOLOGIES INC.,
EMBRACE INFRASTRUCTURE, LLC, and
MICHAEL EINSTEIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
GREGORY SHERALD,                                             :
                                                             :
                          Plaintiff,                         :
                                                             :
         v.                                                  :
                                                             : **CASE NO. 11 Civ. 0939 (TPG)**
EMBRACE TECHNOLOGIES INC.,                                   :
EMBRACE INFRASTRUCTURE, LLC, and                             :
MICHAEL EINSTEIN                                             :
                                                             :
                          Defendants.                        :
------------------------------------------------------------ X

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Dated: July 2, 2012
       New York, New York

# TABLE OF CONTENTS

A. Preliminary Matters ........................................................................................... 1

B. Calculation of the "Regular Rate" .................................................................... 2

C. "Off-the-Clock" Claims .................................................................................... 3

    1. Compensability of Pre-Shift Activities ....................................................... 3

    2. Compensability of Interrupted Meal Breaks .............................................. 4

    3. Employer Knowledge of Alleged "Off-the-Clock" Work .......................... 7

D. Vacation Pay Claim ........................................................................................... 9

E. Expense Reimbursement Claim ...................................................................... 10

F. Ancillary Points ............................................................................................... 10

# TABLE OF AUTHORITIES

Bind v. City of New York, No. 08cv11105, 2011 U.S. Dist. LEXIS 113629
  (S.D.N.Y. Sept. 30, 2011) ........................................................................................ 3

Edwards v. City of New York, No. 08cv3134, 2012 U.S. Dist. LEXIS 68055
  (S.D.N.Y. May 15, 2012) ..................................................................................... 3, 9

Haviland v. Catholic Health Initiatives—Iowa, Corp., 729 F. Supp. 2d 1038 (S.D. Iowa 2010) .. 6

Hertz v. Woodbury County, 566 F.3d 775 (8th Cir. 2009) ............................................... 4

Kuebel v. Black & Decker Inc., 643 F.3d 352 (2d Cir. 2011) ....................................... 3, 4

Mason Tenders District Council of Greater New York v. G & C Construction Safe, Inc.,
  No. 10 Civ. 3399, 2011 U.S. Dist. LEXIS 20720 (S.D.N.Y. Feb. 8, 2011) .................. 1

Mendez v. Radec Corp., 232 F.R.D. 78 (W.D.N.Y. 2005) ............................................... 5

Reich v. Southern New England Telecommunications Corp., 121 F.3d 58 (2d Cir. 1997) ...... 4

Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98 (2d Cir. 2011) ..................... 7

Roy v. County of Lexington, 141 F.3d 533 (4th Cir. 1998) ............................................ 6

Singh v. City of New York, 524 F.3d 361 (2d Cir. 2008) ......................................... 4, 5, 6

Spencer v. Christ Church Day Care Center, Inc., 280 A.D.2d 817, 720 N.Y.S.2d 633
  (3d Dept. 2001) ........................................................................................................ 9

Wolman v. Catholic Health System of Long Island, Inc., No. 10cv1326, 2012 U.S. Dist. LEXIS
  21654 (E.D.N.Y. Feb. 16, 2012) .............................................................................. 5

A.   **Preliminary Matters**

Two arguments advanced by plaintiff warrant preliminary consideration at the outset as they permeate several of the points set out in his summary judgment opposition brief.

First, plaintiff asks the Court to disregard the Einstein affidavit in its entirety due to a formatting error that resulted in the first line of paragraph 11 being omitted. (Pltf's SJ Opp. [Doc. No. 39] at 7-8). That line reads as follows: "11. Another aspect of plaintiff's claim, as I understand it, concerns vacation pay. In ..." (Corrected Einstein Aff. ¶ 11). Nothing of substance is missing. More importantly, plaintiff cites no authority for the illogical proposition that an imperfection renders an affidavit inadmissible or otherwise undeserving of judicial contemplation. To the contrary, an affidavit is competent summary judgment evidence so long as the testimony is sworn and based on personal knowledge, and the facts set out in the affidavit would be admissible at trial. 11 Moore's Federal Practice § 56.94 (Matthew Bender 3d Ed.). The Einstein affidavit plainly satisfies each of these criteria, and is therefore a proper part of the summary judgment record.

Second, plaintiff suggests the terms of his employment were not controlled by the collective bargaining agreements between LLC and the Union because he was hired by, and worked directly for, ETI. (Pltf's SJ Opp. [Doc. No. 39] at 7). However, plaintiff expressly alleges, and defendants acknowledge, that ETI and LLC operated as a single employer. (Corrected Einstein Aff. ¶ 2). As a matter of law, then, the collective bargaining agreements applied across-the-board to all Embrace employees. Mason Tenders District Council of Greater New York v. G & C Construction Safe, Inc., No. 10 Civ. 3399, 2011 U.S. Dist. LEXIS 20720, at *10 (S.D.N.Y. Feb. 8, 2011)("'A collective bargaining agreement may be enforced against non-

1

signatory employers if the employees constitute a 'single employer' and if the employees of the companies constitute a single appropriate bargaining unit.'").

B. **Calculation of the "Regular Rate"**

Plaintiff's claim that certain bonuses he received were improperly excluded from the calculation of his "regular rate" of pay, thereby resulting in an underpayment of overtime compensation, is lacking in evidentiary support and ultimately fails on the law.

To begin with, the reference in plaintiff's brief to a 2005 bonus is a complete mystery; there was in fact no such bonus, indeed it is not even mentioned in the portion of the record cited by plaintiff for the proposition that, "As to the 2005 bonus, the record shows that bonus was linked to job performance." (Pltf's SJ Opp. [Doc. No. 39] at 8)(citing Pltf's 56.1 Statement [Doc. No. 40] ¶ 13).

Turning to the two-part bonus awarded in 2006, plaintiff does not take issue with the legal truism that because these payments were negotiated with the Union and tethered to the ratification of a collective bargaining agreement they are excludable from the regular rate. Rather, plaintiff offers a technical argument that a letter from the Union confirming the purpose of the bonus payments—a document he introduced as an exhibit to the deposition of Mr. Einstein—is inadmissible hearsay. But hearsay evidence can be used to support a motion for summary judgment so long as it is convertible to admissible form. 11 Moore's Federal Practice § 56.91[2] (Matthew Bender 3d Ed.). The letter in question is easily authenticated and therefore properly before the Court. Id. In any event, the purpose of the bonus is confirmed by Mr. Einstein's sworn affidavit testimony (Corrected Einstein Aff. ¶ 7); that testimony is plainly admissible, non-refuted, and conclusively establishes that the ratification bonus was properly excluded from the regular rate calculation. (Defs' SJ Brief [Doc No. 21] at 8).

2

Plaintiff's characterization of the $1000.00 bonuses he received in 2007 and 2008 as "performance-based" is beside the legal point. (Pltf's SJ Opp. [Doc. No. 39] at 9). Performance-based or not, plaintiff does not aver, nor can he, that he enjoyed some contractual right to a year-end bonus, nor does he challenge Mr. Einstein's testimony that the 2007 and 2008 bonuses were discretionary in nature (Corrected Einstein Aff. ¶ 8); as such, the bonuses unquestionably satisfy the statutory criteria for exclusion from the "regular rate" calculation. 29 U.S.C. § 207(e)(3)(a).

C. **"Off-the-Clock" Claims**

All agree that "to establish liability under the FLSA on a claim for unpaid overtime, 'a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work.'" Edwards v. City of New York, No. 08cv3134, 2012 U.S. Dist. LEXIS 68055, at *9-10 (S.D.N.Y. May 15, 2012)(quoting Kuebel v. Black & Decker Inc., 643 F.3d 352 (2d Cir. 2011)). Neither element of proof is genuinely in dispute.

1. **Compensability of Pre-Shift Activities**

Plaintiff does not challenge defendants' showing that, under the controlling case law, he is not entitled to compensation for time dedicated to (i) compiling personal notes regarding Embrace customers, as such activities were not mandated by Embrace and therefore not pursued necessarily and primarily for Embrace's benefit (Defs' SJ Brief [Doc. No. 21] at 15), or (ii) tidying up his company-provided van, in that such endeavors are not integral and indispensable to the performance of his job as a technician (id. at 16). "Having failed to address [defendants'] viable summary judgment arguments on this claim, it is deemed waived." Bind v. City of New York, No. 08cv11105, 2011 U.S. Dist. LEXIS 113629, at *45 (S.D.N.Y. Sept. 30, 2011).

Instead, plaintiff focuses exclusively on the compensability of time allegedly spent pre-shift on company-required paperwork, asserting that he was never directed to complete this task only during regular working hours and was discouraged from doing paperwork on client premises. (Pltf's SJ Opp. [Doc. No. 39] at 11). But where, as in this case, "it cannot seriously be disputed that [plaintiff] had flexibility in deciding when to complete his administrative responsibilities" and was not required to do so during non-working hours, an employee cannot manufacture compensable time by performing such tasks pre-shift without telling anyone about it. Kuebel, 643 F.3d at 360-61.

Besides, plaintiff was unable to quantify the time spent pre-shift on company-required paperwork as distinguished from personal paperwork. If anything, plaintiff's testimony suggests this function was not performed "off-the-clock" with any degree of regularity and, when it was, involved a varying, albeit always modest, time commitment (Sherald Dep. at 82-83), such that "as a practical administrative matter, it would be difficult for [defendants] to record and monitor that additional ... time ...," and therefore the time is non-compensable as *de minimis*. Singh v. City of New York, 524 F.3d 361, 371 (2d Cir. 2008)(Sotomayor, J.).

2.   **Compensability of Interrupted Meal Breaks**

"The statutory default for mealtimes is that they are non-compensable because they do not constitute 'work' under the FLSA." Hertz v. Woodbury County, 566 F.3d 775, 784 (8th Cir. 2009). Thus, "the employee bears the burden to show that his or her mealtimes were compensable work." Id. In this Circuit, the FLSA is "interpreted to require compensation for a meal break during which a worker performs activities predominantly for the benefit of the employer." Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 64 (2d Cir. 1997). Recognizing that his admissions at deposition regarding the minimal extent to which

4

Embrace interrupted his meal breaks preclude him from satisfying the predominant benefit test, plaintiff endeavors to generate a trial-worthy claim by changing his testimony. Summary judgment cannot be defeated by such tactics.

In cases like this one, "where employees have sought compensation for their breaks because, though relieved from normal duties, they remain responsible for certain employment-related functions..., courts have distinguished between employer requirements that substantially hinder an employee's ability to use the time freely and those requirements that place only a minimal burden on the employee's use of his time." Singh, 524 F.3d at 368. Accordingly, "interrupted meal breaks are only compensable if an employee is required 'to give up a substantial measure of his time and effort.'" Wolman v. Catholic Health System of Long Island, Inc., No. 10cv1326, 2012 U.S. Dist. LEXIS 21654, at *30 (E.D.N.Y. Feb. 16, 2012). Thus, contrary to plaintiff's implicit suggestion, "the relevant question is whether the break itself is predominantly spent on activities for the employer's benefit, not on whether the employee did anything at all for the employer's benefit." Mendez v. Radec Corp., 232 F.R.D. 78, 83 (W.D.N.Y. 2005).

Although never mentioned during the course of his deposition, plaintiff claims in his summary judgment opposition that there were about ten (10) occasions per year when Mr. Einstein supposedly ate lunch with him and other technicians and engaged in "shop" talk. (Pltf's 56.1 Response [Doc. No. 41] ¶ 8). Even accepting plaintiff's account in this regard as true, the fact remains that plaintiff was still able to eat lunch, and "if the employee has had all of his legally required needs met during a lunch break, then the mere fact that some benefit might also accrue to the employer will not require compensation, since the employer's benefit has not come at the expense of the employee." Haviland v. Catholic Health Initiatives—Iowa, Corp., 729 F.

5

Supp. 2d 1038, 1070 (S.D. Iowa 2010). No reasonable jury could possibly find the burden of work-related conversation so great as to "transform the entire [meal period] into work for purposes of the FLSA." Singh, 524 F.3d at 370. To the contrary, notwithstanding any "shop" talk, "the break time remained predominantly for the employees' benefit" and so is non-compensable. Id. at 368.

Plaintiff's summary judgment affidavit also adds a new gloss to his deposition testimony regarding alleged meal break interruptions occasioned by telephone calls from the office, typically initiated by Michelle Cintron, or a client. The affidavit suggests that plaintiff's meal breaks were "often disrupted" to the point where he was required to dedicate "10 minutes" or "several minutes" of his time to resolve the issue before he could go back and complete his meal. (Second Sherald Aff. [Doc. No. 38] ¶ 9). However, this account stands in irreconcilable conflict with plaintiff's testimony at deposition, where he described these interruptions as sporadic and explained that when they occurred he would either advise Ms. Cintron that he was on break and would return her call later or if Ms. Cintron had "simple questions" he would "answer[] the question and then got off the phone," elaborating that, "But when it starts to get a little bit complicated, that's when I inform them that I'll call them when I finish lunch break." (Sherald Dep. at 92-93).

Modest interruptions of the sort attested to by plaintiff at deposition are not nearly so disruptive as to alter the fundamental nature of the meal break and render the time predominantly for Embrace's benefit, hence the time would not be compensable. Roy v. County of Lexington, 141 F.3d 533, 546 (4th Cir. 1998)(holding that frequency of meal break interruptions—27% during sample period—were not sufficiently substantial "as to warrant compensation during all meal periods"). See also Singh, 524 F.3d at 369 (applying predominant benefit test and holding

6

that, "when an employee is minimally restricted during a commute, such that his or her use of commuting time is materially unaltered, the commuting time will generally not be compensable under the FLSA.").

Plaintiff cannot concoct a factual dispute on the point by proffering a summary judgment affidavit that effectively recants his damning and dispositive testimonial admissions regarding the magnitude of his alleged meal break interruptions. As the Second Circuit recently reiterated, "in certain cases a party's inconsistent and contradictory statements transcend credibility concerns and go to the heart of whether the party has raised *genuine* issues of material fact to be decided by a jury." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011)(emphasis in original). "This is such a case. Therefore, ...the evidence introduced by [plaintiff] was not 'of such a character that it would warrant the jury in finding a verdict in favor of that party'" as to the compensability of plaintiff's meal times. Id.

### 3. Employer Knowledge of Alleged "Off-the-Clock" Work

Plaintiff's attempt to establish that defendants knew or should have known of his alleged "off-the-clock" work rests to some extent on a mischaracterization of the record and more broadly on a misapplication of the governing legal precepts.

Illustrative of plaintiff's butchering of the summary judgment record is the contention in his brief that "there were times when Sherald promptly informed management that he worked through lunch yet received no compensation, because he was told that a skipped meal does not fall within the meaning of overtime." (Pltf's SJ Opp. [Doc. No. 39] at 11). To begin with, at deposition plaintiff testified there were just a "couple of times" during his nearly four (4) year tenure when he reported working through lunch (Sherald Dep. at 90), which would hardly put an employer on notice of what plaintiff now claims was a regular practice of skipping all or part of

7

his allotted meal period. Moreover, and rather ironically, in the excerpt from Mr. Einstein's deposition cited by plaintiff for the proposition that he was led to understand interrupted meal periods do not count as hours worked for overtime pay purposes (Pltf's 56.1 Statement [Doc. No. 40] ¶ 5), Mr. Einstein was actually recounting that management responded to news that technicians were skipping lunch and leaving the worksite an hour early with emphatic reminders that the one-hour meal breaks were mandatory. (Einstein Dep. at 72-73).

With respect to the pre-shift component of his off-the-clock claim, plaintiff asserts that employer knowledge can be inferred from his affidavit testimony that there were occasions when Mr. Bugge observed him cleaning out his company-provided van prior to the start of his scheduled shift. (Pltf's 56.1 Statement [Doc. No. 40] ¶ 7; Second Sherald Aff. [Doc. No. 38] ¶¶ 12-13). This assertion contradicts plaintiff's admissions at deposition that he never either alerted management to any pre-shift work he allegedly performed (Sherald Dep. at 82-83) or registered a complaint about not being paid for that time (Sherald Dep. at 96). In any event, the time plaintiff allegedly spent tidying up his van is not compensable, a point that, as discussed above, plaintiff implicitly, and in light of the controlling case law necessarily, concedes. (See Defs' SJ Brief [Doc. No. 21] at 16). Surely a jury cannot infer employer knowledge that an employee was performing compensable "work" off-the-clock from evidence that management saw him engaged in non-compensable activities (i.e., non-work) pre-shift.

Beyond that plaintiff claims "[t]he record also shows that management instructed and tacitly discouraged him from reporting off-the-clock work, and thereby acquired actual or constructive knowledge of said overtime work." (Pltf's SJ Opp. [Doc. No. 39] at 12). However, the evidence cited by plaintiff provides no support for this proposition, which is belied by Mr. Einstein's non-refuted testimony that Embrace relied on its technicians, who after all worked in

the field, to report hours worked (Einstein Dep. at 75; Corrected Einstein Aff. ¶ 5), and plaintiff's admission that he was always paid for the overtime hours he reported (Sherald Dep. at 87-90). Thus, as in Edwards v. City of New York, where "[t]he plaintiffs rel[ied] upon the perceived existence of 'an unwritten rule' on overtime, but fail[ed] to adduce any evidence that this alleged rule existed, or that supervisors knew about it or did anything to propagate it..., a jury would have to rely on speculation and conjecture to render a verdict in ... plaintiff[']s favor." 2012 U.S. Dist. LEXIS 68055, at *15. "Because ... plaintiff[] failed to produce any evidence that the defendant[s] had actual or constructive knowledge of uncompensated overtime," summary judgment should enter in favor of defendants as to the Second Cause of Action. Id. at *16 (dismissing off-the-clock claim on summary judgment).

### D.  Vacation Pay Claim

Plaintiff cites no authority establishing a default rule that in the absence of a written forfeiture provision employees are entitled to a cash out of accrued but unused vacation, even where as here established company practice dictates otherwise. The law is to the contrary. See Spencer v. Christ Church Day Care Center, Inc., 280 A.D.2d 817, 720 N.Y.S.2d 633, 634 (3d Dept. 2001)(holding that plaintiff suing for vacation pay must prove that "defendant had a regular practice of paying its employees accumulated and unused vacation and compensatory time and that [plaintiff] relied upon such practice in accepting or continuing her position...").

In any event, as defendants pointed out in their opposition to plaintiff's motion for partial summary judgment, the Vacation provisions of the collective bargaining agreements between Embrace and the Union expressly state that in the absence of the employer's written approval—which plaintiff does not claim to have procured—unused vacation pay does not carry over from one year to the next. (Defs' SJ Opp. [Doc. No. 34] at 12-13). And, as defendants' opposition

papers further demonstrate, although the same collective bargaining agreements require a pay out of any unused accrued vacation time at termination, Embrace's final payment to plaintiff included forty (40) hours of vacation pay, which was undisputedly more than plaintiff had accrued to that point. (Defs' SJ Opp. [Doc. No. 34] at 13).

### E.  Expense Reimbursement Claim

Plaintiff's attempt to recast his expense reimbursement claim in the garb of a "tools of the trade" claim is unavailing: "tools of the trade" is a minimum wage concept that is inapplicable to the Labor Law § 193 claim alleged in the Amended Complaint. (Defs' SJ Opp. [Doc. No. 34] at 10). Thus, regardless of whether the items allegedly purchased by plaintiff are properly labeled "tools of the trade" the Fifth Cause of Action cannot survive summary judgment given the undisputed fact that plaintiff did not experience a deduction from his wages. (Id.).

### F.  Ancillary Points

The ancillary arguments plaintiff cobbles together under Point V require little discussion:

- Because defendants are entitled to summary judgment on the merits, liquidated damages are not at issue. See Kuebel, 643 F.3d at 361 (where commute time claim failed on the merits, court "need not reach ... whether any violation was willful").

- Neither plaintiff's so-called "Post-Termination Wage Claim" nor his "On-The-Clock Overtime Claim Pertaining to The Two 15-Minute Long Breaks" is alleged in the Amended Complaint, and therefore these claims are not properly before the Court. (See Defs' SJ Opp. [Doc. No. 34] at 2-3). In any event, the former claim is unsustainable for the reasons stated in defendants' brief in opposition to plaintiff's motion for partial summary judgment (id. at 3-4), and the latter claim is untenable, in that the breaks were treated as working time for purposes of calculating plaintiff's compensation and hours worked, see 29 C.F.R. § 785.18, hence even if plaintiff routinely skipped these breaks he suffered no legal, or financial, deprivation.

- Finally, as defendants demonstrated in their summary judgment opposition papers, there is no merit to plaintiff's contention that defendants improperly excluded certain components of his compensation in 2008 from the calculation of the regular rate. (See Defs' SJ Opp. [Doc. No. 34] at 5-8).

10

Dated: New York, New York
July 2, 2012

                        Respectfully submitted,

                        WIGGIN AND DANA LLP
                        450 Lexington Avenue
                        Suite 3800
                        New York, NY 10017
                        (212) 490-1700
                        (212) 490-0536 (fax)

                    By: _____
                           Lawrence Peikes (LP-2478)
                           lpeikes@wiggin.com

                        Attorneys for Defendants
                        EMBRACE TECHNOLOGIES INC.,
                        EMBRACE INFRASTRUCTURE, LLC
                        and MICHAEL EINSTEIN

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2012, the foregoing Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

_____
Lawrence Peikes