UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
:
GREGORY SHERALD, :
:
                      Plaintiff, :      11 Civ. 939 (TPG)
:
     – against – :      **OPINION**
:
EMBRACE TECHNOLOGIES, INC., :
EMBRACE INFRASTRUCTURE, LLC, and :
MICHAEL EINSTEIN, :
:
                      Defendants. :
:
------------------------------------------------x

      Plaintiff brings this action against his former employers under the Fair Labors Standards Act ("FLSA") and New York State Labor Law. Plaintiff alleges that defendants illegally undercompensated him in several ways during the course of his employment.

      Defendants move for summary judgment under Fed. R. Civ. P. 56 on all counts, and plaintiff cross-moves for summary judgment on all counts except count Two. Plaintiff also moves to strike the affidavits of defendant Michael Einstein.

      Defendants' summary judgment motion is granted in part. Plaintiff's cross-motion for summary judgment and motion to strike are denied.

**Facts**

The following facts are not disputed unless otherwise noted.

Defendant Michael Einstein founded defendant Embrace Technologies, Inc., a New York company, in 2001. Thereafter, he founded Embrace Infrastructure, LLC, another New York entity. Both companies are in the same line of business—the installation of telephone and data-networking systems. In addition, they serve the same customers, operate out of the same offices, and otherwise function like a single company.

As the companies grew in tandem, they began to hire data technicians to serve their customer base. In August 2005, Embrace Technologies hired plaintiff for one of these positions. Plaintiff was initially compensated $42,500 annually, but his pay rose to $45,000 after the expiration of a ninety-day probationary period. Plaintiff also received paid holidays, one week of paid vacation after the first six months of his employment, and two weeks of paid vacation every year thereafter.

These and other terms of plaintiff's employment were consistent with a collective bargaining agreement between Embrace Infrastructure and Communications Workers of America, Local 1106 (the "collective bargaining agreement" or "agreement").[1] That agreement specified that plaintiff was to

---

[1] Plaintiff contends that the court should disregard the collective bargaining agreement for purposes of the present motion because it has not been fully authenticated as a business record and is thus hearsay. Yet plaintiff himself notes occasions where certain payments were made pursuant to the collective bargaining agreements—such as an initial $500 signing bonus—and the terms of the plaintiff's employment are otherwise consistent with that agreement. Thus the court has no doubt that this document could be readily authenticated at trial and is therefore properly before the court as evidence "of a type that would be admissible at trial." Brink v. Union Carbide Corp., No. 99-7303, 2000 U.S. App. LEXIS 7150, at *4 (2d Cir.

begin his shift at 8 a.m. and end his shift at 5 p.m., with two paid fifteen-minute breaks and one unpaid lunch hour during that interval. The agreement further specified that the annual sum to be paid plaintiff was actually derived from an operative hourly rate dictated by job title and experience. Lastly, the agreement contained the following written policy concerning the use of paid vacation time: "employees who are eligible for two (2) or more weeks of vacation may, when he/she is selecting vacation, and based on Employer's written approval, elect to carry over one (1) of his/her weeks into the following calendar year."

Plaintiff's job consisted of travelling to worksites in a company van, installing cables and other telephonic infrastructure, and filling out paperwork in relation to those jobs. On most days, plaintiff reported to work at company headquarters, but he was largely unsupervised once he left for a worksite. Accordingly, plaintiff was responsible for logging his time for payroll purposes.

Plaintiff worked for defendants from August 25, 2005 to April 16, 2009. During that time, he was duly paid his hourly rate and compensated time-and-a-half for reported overtime hours based upon his hourly rate.[2] That hourly rate was $20.43 until November 28, 2005. On that date, plaintiff's probationary period ended, and his hourly rate rose to $21.63 to produce the annual pay of $45,000. That hourly rate then further increased to $22.06 on September 8,

---

Apr. 18, 2000). The court reserves the question of the applicability of the terms of the collective bargaining agreement for the discussion *infra*.
[2] Plaintiff's paychecks were paid from the account of Embrace Infrastructure rather than Embrace Technologies, his nominal employer.

2006; to $22.50 on March 23, 2007; and to $22.95 on February 22, 2008. Defendant reported and was paid for 32 hours of overtime in 2005, 52 hours in 2006, 64 hours in 2007, and 21 hours in 2008. Plaintiff also received a company credit card to pay for expenses that arose in the course of his duties.

In addition to his salary, plaintiff received certain forms of supplemental income from defendants. In 2006, he received a $500 signing bonus pursuant to the collective bargaining agreement, and in both 2007 and 2008, he received $1000 payments that defendants claim were discretionary bonuses. In addition, payroll records document two atypical payments in 2008. Plaintiff's paycheck of August 8, 2008 includes an unclassified payment of $354.22, and plaintiff received an additional $3,181.60 (denominated "salary") for the pay period of September 1-12, which defendants contend was the result of an inflated regular hourly rate stemming from a job at a museum where plaintiff was paid the prevailing wage due under the union contracts in force at that location.

As for his vacation time, plaintiff did not take any vacation days in 2005. In 2006, plaintiff used a week (five work days) of vacation time. In 2007, he used his full two-week allotment of vacation days. In 2008, he used eight days of vacation time, and in 2009, he accrued four days but used none.

In response to a downturn in business, defendants terminated plaintiff's employment effective April 17, 2009. Plaintiff received one last check for the pay period between April 11 and April 24. This check included 40 hours of pay at the regular hourly rate and 40 hours of vacation pay.

**Allegations and the Present Motion**

On May 31, 2011, plaintiff filed a five-count amended complaint based on these facts and certain disputed factual allegations noted below.

Count One alleges that defendants violated 29 U.S.C. § 207(a) by paying plaintiff an overtime rate less than the statutorily-required overtime rate from February 2008 and May 2009.[3] That statute specifies that overtime hours must be compensated a rate "one and one-half times the regular rate at which he is employed." Id. Plaintiff alleges that certain categories of compensation were wrongfully excluded from defendants' calculation of the regular rate and hence the overtime rate.

Count Two alleges that defendants violated 29 U.S.C. § 207(a) by failing to pay overtime for work over lunch and work performed before plaintiff's shift formally began.[4] Plaintiff claims that on many occasions he was forced to skip lunch to attend to customers, to field calls from the office, or to participate in lunchtime meetings led by defendant Einstein. He also testified in his deposition that on many occasions he parked his van in the lot adjacent to defendants' headquarters at approximately 7:30 a.m. to attend to various work-related tasks until his shift began at 8:00 a.m. Plaintiff further testified that on some such occasions, Ron Bugge—a high-level employee of defendants—saw

---

[3] i.e. three years before the action was filed, assuming that the three-year statute of limitations in 29 U.S.C. § 255(a) applies.
[4] While the amended complaint focuses largely on the interrupted meal breaks as a factual predicate for Count Two, it also states more broadly that defendants (Cplt. ¶ 35) "regularly failed to pay plaintiff for periods of overtime work that he performed each week above and beyond 40 hours, some of which overtime related to skipped or interrupted meal breaks." Accordingly, defendants were on notice of other possible claims for unpaid overtime stemming from work performed by plaintiff outside his regular work schedule.

plaintiff performing this pre-shift work.

Count Three alleges that defendants failed to pay the proper overtime rate from August 25, 2005 to May 2009 in violation of New York State Labor Law and associated regulations.[5] In this count, plaintiff alleges violations of the New York Wage Payment Act, N.Y. Lab. Law § 190 *et seq.*; N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; and the state Minimum Wage Act, N.Y. Lab. Law § 650 *et seq.*

Count Four alleges that defendants violated state law[6] by failing to pay plaintiff for unused, accrued vacation time. In 2006, plaintiff used only five out of ten vacation days. In 2008, he used eight days out of ten. He didn't use any of his four accrued vacation days in 2009. Plaintiff also alleges that he was eligible for some vacation in the calendar year 2005. Plaintiff was paid forty hours, or five days, of vacation pay when he was terminated, but he claims that he should have been paid for at least eleven vacation days, not counting the unspecified number of vacation days allegedly owed him from 2005.

Count Five alleges that defendants improperly deducted certain costs from plaintiff's salary in violation of N.Y. Lab. Law § 193. Plaintiff alleges that during the course of his employment, he personally purchased tools and supplies for work.[7] Since he was never compensated for these purchases, plaintiff claims that they were (Cplt. ¶ 73) "tantamount to an improper charge

---

[5] The statute of limitations for these claims under New York Labor Law is six years. See N.Y. Lab. Law § 198(3).

[6] The complaint does not allege the specific Labor Law provision violated, but it can be fairly read to refer to N.Y. Lab. Law § 191, which obligates employers to pay certain "wages," and N.Y. Lab. L. § 190(1), which defines "wages" to include benefits and wage supplements like accrued vacation time.

[7] In his affidavits, plaintiff itemizes these purchases, which sum to approximately $3,000.

against pay that effectively lowered Plaintiff's regular and overtime wage rates."

Defendant now moves for summary judgment on all counts. Plaintiff cross-moves for partial summary judgment on Counts One and Three—insofar as they concern the regular rate calculation for 2008—and for summary judgment on Counts Four and Five. Plaintiff also moves for summary judgment on an unpled claim under the New York Minimum Wage Act for hours he allegedly worked after his termination. Lastly, plaintiff moves for liquidated damages and pre-judgment interest.

Plaintiff also moves to strike two affidavits of defendant Michael Einstein that were filed in conjunction with the motions for summary judgment.

## Discussion

I) Motion to Strike

Plaintiff moves to strike two affidavits of defendant Michael Einstein. The first affidavit, filed on May 18, 2012, contains an error. Page 4 ends with the final sentence of paragraph 10. Page 5 begins mid-sentence in a paragraph preceding numbered paragraph 12. The second affidavit, dubbed the "corrected affidavit of Michael Einstein," was filed with defendants' reply papers. It is identical in all respects to the first Einstein affidavit, except insofar as it includes the missing beginning of paragraph 11.

The motion to strike is entirely without merit and requires no discussion. It is denied.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Thus such affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001).

Einstein's sworn affidavits are plainly admissible as direct party testimony. This conclusion is in no way undercut by the trivial error detailed above, which at most renders a small portion of the affidavit somewhat confusing. Furthermore, the error in question plainly smacks of formatting error, not perfidy. To the extent that plaintiff argues—rather than merely asserts—that the affidavits are inadmissible, he claims that the first affidavit actually consists of two documents, pages 1-4 and 5, respectively. Per plaintiff, only the latter document is executed, so the former must be excluded. This is legal formalism at its most pernicious. Since the error in the original affidavit does not undermine the substance of Einstein's testimony, which would plainly be admissible at trial, the motion to strike is denied.

II) Summary Judgment Motions

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." Id. The movant has the burden of showing that no genuine factual dispute exists. Id. However, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. Id. at 249. "When both sides have moved for summary judgment, each party's motion is examined on its own merits, and all reasonable inferences are drawn against the party whose motion is under consideration."Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011).

a) Counts One and Three

Both sides move for summary judgment on Counts One and Three, wherein plaintiff claims that defendants incorrectly calculated his regular rate of pay, which led to an incorrect overtime-rate calculation and inadequate compensation for plaintiff's reported overtime hours.[8]

Under the FLSA, an employee is entitled to overtime pay for each hour that his workweek exceeds forty hours. See 29 U.S.C. § 207(a)(1). An employee's overtime rate is his "regular rate" of pay multiplied by one and one half. See 29 C.F.R. § 778.107. The regular rate under the FLSA "is a rate per hour." 29 C.F.R. § 778.109. "If the employee is employed solely on the basis of a single hourly rate, the hourly rate is the 'regular rate.'" 29 C.F.R. § 778.110. The regular rate calculation can also include certain forms of remuneration, like mandatory production bonuses, that serve to increase an employee's effective hourly rate. See id. But per statutory exemptions in the FLSA, the

---

[8] It is uncontested that all defendants are employers covered by the FLSA and that plaintiff was an employee under the Act.

regular rate does not include, *inter alia*, sums "paid in recognition of services performed during a given period if…both the fact that payment is to be made and the amount of the payment are determined at the sole discretion of the employer at or near the end of the period…." 29 U.S.C. § 207(e)(3). Nor does the regular rate include "payments to an employee which are not made as compensation for his hours of employment." 29 U.S.C. § 207(e)(2).

Similarly, under New York law, the regular rate is "the amount that the employee is regularly paid for each hour of work." 12 N.Y.C.R.R. § 142-2.16. New York law also incorporates the FLSA's statutory exemptions to the regular rate. See 12 N.Y.C.R.R. § 142-2.2.

Here, plaintiff's paychecks and the collective bargaining agreement establish that plaintiff was paid an hourly rate and that the overtime rate derived from the hourly rate was correctly calculated. Plaintiff nevertheless argues that the hourly rate is not the proper regular rate because: 1) the defendants have not established that the collective bargaining agreement was binding on Embrace Technologies, plaintiff's employer, rather than just Embrace Infrastructure, the signatory to the agreement;[9] and 2) the regular rate should have taken into account various payments plaintiff received in the course of his employment, including a $500 signing bonus in 2006, the $1000 bonuses in 2007 and 2008, and the payments of $354.22 and $3,181.60 in 2008.[10]

---

[9] The court has already dispensed with plaintiff's argument that the collective bargaining agreement constitutes inadmissible hearsay in footnote 1 *supra*.
[10] The amended complaint asserts that a number of other payments—including (Cplt. ¶ 24)

The former argument need not long detain the court. After all, plaintiff was paid by Embrace Infrastructure, and plaintiff acknowledged in his deposition (p. 40) that he was a union member covered by the collective bargaining agreement. Furthermore, the record shows that Embrace Technologies and Embrace Infrastructure acted as essentially one company for all purposes, and case law makes clear that "one company [can be] bound by a collective bargaining agreement made by another company, [if] they are a 'single employer,' [and] together they represent an appropriate employee bargaining unit." Lihli Fashions Corp. v. NLRB, 80 F.3d 743, 747 (2d Cir. 1996). Two nominally separate entities are considered a single employer when they "are actually part of a single integrated enterprise...." Clinton's Ditch Co-op Co., Inc. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985) (internal quotation omitted). Here, the companies were founded by the same person, operated from the same premises, and were otherwise functionally indistinguishable. In addition, the technicians covered by the bargaining agreement all performed similar activities and constituted an appropriate employee bargaining unit. Thus case law and reality confirm the applicability of the collective bargaining agreement to plaintiff's employment with Embrace Technologies.

Since plaintiff's paychecks and the collective bargaining agreement demonstrate that plaintiff was paid an hourly rate that was multiplied by one

---

overtime pay, vacation pay, and holiday pay—should have been included in the regular rate calculation. But these categories of compensation are expressly excluded from the regular rate pursuant to statutory exceptions in the FLSA. See 29 U.S.C. §§ 207e(2),(5) (excluding vacation/holiday pay and overtime pay, respectively, from the definition of "regular rate"). The court thus holds as a matter of law that this income was rightly excluded from the regular rate calculation.

and one half to produce his overtime rate, the only remaining question is whether the various supplemental payments discussed above were rightly excluded from the regular rate. Several sources of evidence—namely, the collective bargaining agreement, Einstein's deposition, and Einstein's affidavit—confirm that the $500 bonus became payable under the collective bargaining agreement by virtue of plaintiff's hiring. Since this payment was owed to plaintiff the moment he was hired, it was not rendered in "compensation of his hours of employment," 29 U.S.C. § 207(e)(2), and was therefore properly excluded from the regular rate.

Einstein testified in his deposition that the $1000 payments in 2007 and 2008 were bonuses intended to allow employees to share in defendants' profitability. Einstein further stated in his affidavit that the bonuses were entirely discretionary, a contention that is corroborated by the fact that they were given only in those two years. In his deposition, plaintiff testified to not knowing the reason for these payments, and he has not otherwise introduced evidence to dispute Einstein's characterization of the payments as bonuses. In short, plaintiff has not raised a genuine issue of fact as to whether these payments should be included in his regular rate of pay. These payments were made "at the sole discretion of the employer," 29 U.S.C. § 207(e)(3), and thus properly excluded from plaintiff's regular rate.

It is now necessary to consider the $3,181.60 and $354.22 payments in 2008. They were obviously not based upon the regular hourly rate of $22.95. Plaintiff claims that these amounts should be somehow used to re-calculate the

hourly rate for the year applicable to plaintiff's regular employment. The court finds that there is no basis for using the $3,181.60 or the $354.22 to re-calculate the hourly rate for 2008.

Plaintiff's motion for summary judgment on Counts One and Three is denied. Defendants' motion is granted.

b)  Count Two

Defendants have moved for summary judgment on Count Two, wherein plaintiff alleges that he was not paid for work during his unpaid lunch break and before his shift began.

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011). "Though Congress has never explicitly defined what constitutes work under the FLSA, the Supreme Court has generally described work as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" Singh v. City of New York, 524 F.3d 361, 367 (2d Cir. 2008) (citing Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944). Activities that occur during an unpaid mealtime constitute work and must be compensated if those activities are undertaken "predominantly for the benefit of the employer." Reich v. S. New Eng. Telecoms. Corp., 121 F.3d 58, 64 (2d Cir. 1997). All told, the determination of what constitutes work "is

necessarily fact-bound." Id. Moreover, a defendant is not entitled to summary judgment under the FLSA simply because the plaintiff has not precisely quantified the amount of uncompensated work he has performed, so long as a genuine issue of fact exists as to whether *some* uncompensated work was performed, defendant's knew of this work, and a reasonable basis exists for calculating the amount of that work. See Kuebel, 643 F.3d at 365.[11]

Here, plaintiff claims that he was not paid for work occurring before his shift and work occurring during mealtimes. Plaintiff has testified to his performance of the both types of work in affidavits and a deposition,[12] and this testimony cannot be discounted on the present motion. Furthermore, plaintiff specified with reasonable particularity to the amount of off-the-clock work he performed. He claims that he was not paid for 1) thirty minutes of pre-shift work on the majority of days he was employed; 2) various lunchtime meetings occupying the entire lunch hour that allegedly occurred about ten times per year; and 3) interruptions in his lunch from calls of variable duration. While plaintiff's evidence does not conclusively establish the amount of unpaid work

---

[11] Defendants argue that Kuebel stands for the proposition that a plaintiff must make a threshold showing of the amount of his uncompensated work to withstand summary judgment on an FLSA claim. Kuebel, however, expressly states that the amount of uncompensated work is "in essence…damages," id. at 361, and that at the summary judgment stage, plaintiff need only make an adequate showing that some amount of uncompensated work was performed with defendant's knowledge, provided there exists a "reasonable basis for calculating damages." Id. at 364-365.

[12] Plaintiff testified to lunch meetings led by defendant Einstein in his affidavits but not in his deposition. Plaintiff did not, however, testify to the *lack* of such meetings in his deposition, so the two accounts are not flatly contradictory. In addition, plaintiff's failure to mention the lunchtime meetings in his deposition can plausibly be explained by the paucity of questions on the subject, and "if there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because an earlier account was ambiguous, confusing, or simply incomplete." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011) (internal quotation omitted).

potentially compensable as damages, it at least provides a reasonable basis for such a determination by the fact finder. Thus, a genuine question of material fact exists for trial as to whether plaintiff performed uncompensated work off the clock.[13]

But defendants argue that summary judgment is appropriate regardless because plaintiff has made no showing that defendants had actual or constructive notice that such work was being performed. "[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours." Kuebel, 643 F.3d at 363. Thus the fact that plaintiff never sought compensation for the unpaid work in question is not dispositive. Here, defendants' knowledge could be inferred from the fact that much of the alleged lunchtime work involved direct communication with defendant Einstein or other employees of defendants, and the fact that Ron Bugge allegedly saw plaintiff engaging in pre-shift activities on several occasions.

Defendant's motion for summary judgment on Count Two is denied.

c)  Count Four

All parties move for summary judgment on Count Four, wherein plaintiff alleges that he was not fully compensated for his accrued, unused vacation time.

---

[13] Defendants have also argued that the pre-shift work could have readily been done between jobs during the work day, but there is insufficient evidence on the record for the court to make that factual determination over plaintiff's assertion to the contrary. Should defendants wish to further pursue this theory, they should do so at trial.

Under N.Y. Lab. Law § 195(5), an employer must notify employees of its vacation policy "in writing or by publicly posting" the policy. An "employee's entitlement to receive payment for accrued, unused paid time off upon termination of employment is governed by the terms of the employer's publicized policy." Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 120 (S.D.N.Y. 2009).

Defendants notified plaintiff in writing of their vacation policy in a provision in the collective bargaining agreement, which states that "employees who are eligible for two (2) or more weeks of vacation may, when he/she is selecting vacation, and based on Employer's written approval, elect to carry over one (1) of his/her weeks into the following calendar year." In his deposition (p. 39), plaintiff testified that he read the written vacation policy and was not verbally informed about any other vacation policy. Plaintiff nonetheless interprets the written policy to provide for the unconditional accrual of vacation time, but this reading is obviously wrong.

Plaintiff had a right to carry over one week into the next calendar year. That was the limit of the right to carry over. It is also true that this is a right to take extra vacation, but not a right to be paid for unused vacation. Plaintiff was terminated in 2009, at which time he had accrued four days vacation. He was paid for five days vacation. The reason for this is not clear. Perhaps it relates to one vacation day carried over from 2008.

In any event, the main claim of plaintiff regarding vacation is based upon an incorrect premise. Anything due to him for 2008 and 2009 was paid.

Thus, defendants' motion for summary judgment on Count Four is granted. Plaintiff's motion is denied.

d) Count Five

Both sides move for summary judgment on Count Five, wherein plaintiff claims that defendants effectively reduced his wages in violation of N.Y. Lab. Law § 193 by not reimbursing him for tools that he bought with his own money.[14]

Section 193(2) provides that no "employer shall make any charge against wages, or require an employee to make any payment by separate transaction unless such charge or payment is permitted as a deduction from wages under" certain statutory exemptions not at issue in the present case. While the scope of the statutory language is broad, the phrase "any payment" has been interpreted "to refer only to payments from wages," i.e. payments from an employee's own funds. Hudacs v. Frito-Lay, Inc., 660 N.Y.S.2d 700, 703 (N.Y. 1997). And at least one court has construed the provision to apply to charges against wages that take the form of mandatory, unreimbursed purchases of work tools.[15] See Cuzco v. Orion Builders, Inc., No 06 Civ. 2789, 2010 U.S.

---

[14] In both his opposition to defendants' motion and in his briefs in support of his motion, plaintiff offers arguments under the FLSA and 12 N.Y. Comp. R. & Regs. § 137—which applies only to the restaurant industry—despite the fact that the amended complaint only invokes New York Labor Law § 193. The court will limit its analysis only to the claims fairly implied by Count Five, which does not so much as mention the provisions now cited by plaintiff. Regrettably, plaintiff has neglected to otherwise support his state-law claims, but this does not mean that defendants are automatically entitled to summary judgment on this point. Rather the court treats this aspect of defendants' summary judgment motion as unopposed, and an unopposed summary judgment motion "may also fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. N.Y. 2004) (internal quotation omitted).

[15] Defendants argue that the provision only applies when defendants have engaged in (Def.

Dist. LEXIS 51622, at *10-11 (S.D.N.Y. May 26, 2010).

Defendants argue the purchases underlying this count were not required by defendants and thus not compensable under Section 193. There is considerable evidence on the record to support this position. It is undisputed that plaintiff never sought reimbursement for his purchases. It is also undisputed that plaintiff was given a company credit card, though plaintiff claims that it was his understanding that the card was not to be used to purchase tools. Furthermore, defendant Einstein has testified in his deposition that it was the practice of his companies to purchase tools for its technicians on request.

But there is also evidence to suggest that plaintiff's purchases were effectively required. For one, Einstein testified that technicians commonly use their own tools in the industry. Second, it is not clear from the record that Einstein actually informed plaintiff of the purported company policy on reimbursement. Viewing this evidence in the light most favorable to plaintiff, a reasonable jury could conclude that plaintiff felt compelled to purchase his own tools by virtue of his employer's silence on the subject and the prevalence of employee-purchased tools in his industry. Accordingly, both motions for summary judgment on Count Five are denied.

e)  The Remainder of Plaintiff's Motion for Summary Judgment

Plaintiff also moves for summary judgment on a claim for certain work

---

Mem. in Support at p. 25) "an act of taking away or subtraction ", but this argument fails to respect the language of Section 193(2), which clearly invalidates arrangements whereby wages are nominally paid in full and then refunded through mandatory expenditures that redound to the benefit of the employer.

performed by plaintiff after his termination. The amended complaint, however, does not contain a single factual allegation related to this claim. Since the claim is completely beyond the scope of the pleadings, the court will not adjudicate it on summary judgment. See Ho v. Target Constr. of NY, Corp., No. 08-CV-4750, 2011 U.S. Dist. LEXIS 33365, 50-51 (E.D.N.Y. Mar. 28, 2011).

## Conclusion

For the foregoing reasons, plaintiff's motion to strike is denied. Plaintiff's motion for summary judgment (covering all counts except count two) is denied.

Defendants' motion for summary judgment is denied as to Counts Two and Five and granted as to Counts One, Three, and Four.

This opinion will resolve docket items numbers 20, 26, 47, and 48.

SO ORDERED.

Dated: New York, New York
January 10, 2013

_____
Hon. Thomas P. Griesa,
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/10/13